O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSE LUIS GUERRERO, | ) | Case No. CV 07-05346 DDP (CWx) |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION** |
| v. | ) | |
| UNITED STATES OF AMERICA, Agents of the Department of Homeland Security, | ) | [Motion filed on April 8, 2008] |
| Defendants. | ) | |

This matter is before the Court on Defendant United States of America's ("Defendant") Motion to Dismiss Plaintiff Jose Luis Guerrero's ("Guerrero") Second Amended Complaint. After reviewing the papers submitted by the parties and considering the arguments therein, the Court is able to rule on the motion without oral argument. The Court grants the motion to dismiss based upon a lack of subject matter jurisdiction.

**I.  BACKGROUND**

This civil action arises from Plaintiff Guerrero's removal from the United States pursuant to a removal order that this

Court found invalid during an earlier criminal case for illegal reentry. Plaintiff Guerrero brings claims under the Federal Torts Claims Act ("FTCA") and a <u>Bivens</u> claim asserting constitutional violations against the United States and unnamed Doe defendants employed as agents of the Department of Homeland Security ("DHS").

Guerrero became a lawful permanent resident on April 23, 1990. On December 2, 2002, Guerrero was convicted of a misdemeanor violation of California Vehicle Code section 20001(a), which creates a duty for a driver involved in an injury accident to stop and provide his name, address, and vehicle registration number, and to offer assistance. On June 16, 2003, the defendant returned from Mexico following a visit with his ailing father, and explained to immigration officials that he lost his resident alien card and applied for admission to the United States. On the following day, the Immigration and Naturalization Service ("INS") filed a Notice to Appear for Removal Proceedings against Plaintiff pursuant to § 212(a)(2)(A)(I)(I) of the Immigration and Nationality Act ("INA"). This part of the INA provides that "any alien convicted of ... (I) a crime involving moral turpitude ... is inadmissible." <u>See</u> 8 U.S.C. § 1182(a)(2)(A)(I)(I)(codifying § 212(a)(2)(A)(I)(I) of the INA).

On October 3, 2003, an immigration judge found that the 2002 misdemeanor conviction was a crime of moral turpitude and ordered Guerrero's removal. On April 12, 2004, the Board of Immigration Appeals ("BIA") affirmed the decision and denied Guerrero's appeal. Three days later, on April 15, 2004, Guerrero was removed to Mexico. On May 1, 2004, he reentered the United States and notified the authorities of his return. On or about May 25, 2004,

he was arrested and charged with a violation of 8 U.S.C. § 1326, which forbids unlawful reentry of removed aliens. On June 1, 2004, a criminal complaint was filed against Guerrero, followed by the indictment on July 6, 2004.

On September 21, 2004, Guerrero moved to dismiss the indictment. On October 18, 2004, this Court conducted a hearing on that motion and provided the parties with a tentative decision dismissing the indictment. (Defs.'s Exh. 18, October 18, 2004 Hearing Tr. 4:14-5:7.) The Court's tentative decision, like its order, found that the 2002 misdemeanor vehicular offense was not a crime of moral turpitude, that the misdemeanor could not be used as a basis for removal, and that the immigration judge's failure to consider Guerrero's application for a waiver of inadmissibility was a due process violation. (See Defs.'s Exh. 8, Order Granting Defendant's Motion to Dismiss the Indictment, at 21.) The 2003 removal order, therefore, was found to have violated Guerrero's due process. (Id.)

At the hearing on the motion, in unmistakable terms, the Court declared, "I am going to issue the tentative as an order." ((Defs.'s Exh. 18, October 18, 2004 Hearing Tr. 5:6-7.) Guerrero's defense counsel then asked whether the Court's decision would result in a forthwith release. The Government represented that immigration officials would likely take custody of Guerrero upon his release. The following exchange then occurred:

Mr. Dordi [Defense]: Your Honor, the reason I bring it up, Your Honor, unless it's a forthwith release, it's unlikely that ICE [Immigration and Customs Enforcement] will immediately take him

into ICE custody and then institute another removal proceeding.  I just don't want him languishing at MDC [the jail].

The Court: Well, on this indictment, he is entitled to a forthwith release.  I don't think there is any question about that there's nothing else in this case holding him.

Mr. Bustamante [Government]: And the Government will make every effort to contact the responsible parties to make sure that this doesn't languish around -- to address the [Guerrero's] concern.

The Court: Okay.  Well, then, I'm going to issue the Order and issue a forthwith release Order as well.

(Defs.'s Exh. 18, October 18, 2004 Hearing Tr. 6:10-23.)

On October 21, 2004, Guerrero was released from the jail pursuant to the Court's forthwith release Order.  Soon thereafter, DHS took Guerrero into its custody and reinstated the 2003 removal order, the very order that this Court was to rule violated due process in its Order.  DHS removed Guerrero from the United States to Mexico on the same day, October 21, 2004.  Although the Court stated its intent to issue the tentative decision as an Order at the October 18, 2004 hearing, it did not do so until October 27, 2004.  The nine-day delay is not unusual as the Court will often take additional time to review the issues and make revisions before issuing a tentative decision as a final Order.

On March 14, 2005, Guerrero, through counsel filed a motion to reopen with the BIA, based upon this Court's Order.  On May 31, 2005, the BIA granted the motion to reopen.  On September 23, 2005, the Immigration Court initiated the reopened removal proceedings. On February 6, 2006, the immigration judge granted Guerrero's

request for a waiver of inadmissibility. DHS appealed. On January 3, 2007, the BIA affirmed the immigration judge's decision.

On February 8, 2007, Guerrero signed an administrative tort claim for submission to DHS, which was received at DHS on February 14, 2007. On March 13, 2007, DHS informed Guerrero's counsel that the administrative tort claim was denied because more than two years passed after Guerrero's claim had accrued. DHS concluded that Guerrero's claim was time-barred under the FTCA's two-year statute of limitations, 28 U.S.C. § 2401.

On August 16, 2007, Guerrero filed this action in the Central District of California. Guerrero filed the Second Amended Complaint, pursuant to stipulation, on March 7, 2008. Guerrero Guerrero's Second Amended Complaint ("SAC") asserts claims under the Federal Torts Claims Act ("FTCA") for false imprisonment, false arrest, negligence, and malicious prosecution, and a <u>Bivens</u> claim for violations of his rights under the Eighth Amendment, Fourth Amendment, and Fifth Amendment of the United States Constitution against the United States and unnamed Doe agents of DHS.

The United States moves to dismiss the FTCA claims against the United States on two grounds: (1) the FTCA claims are time-barred; and (2) the FTCA claims are barred by 8 U.S.C. 1252(g), which strips federal courts of jurisdiction over claims "arising from the decision or action . . . to commence proceedings . . . or execute removal orders against an alien. . . ."

///
///
///

## II. DISCUSSION

Although the parties' briefs begin with and primarily focus on the intricate statute of limitations issues in this case, the Court must first address subject matter jurisdiction. This case requires the Court to navigate the labyrinth of jurisdiction-stripping provisions contained in the Illegal Immigration Reform and Immigrant Responsibility Act, 8 U.S.C. § 1252.

### A.   8 U.S.C. § 1252(g)

The Government argues that 8 U.S.C. § 1252(g) strips this Court of jurisdiction to consider Guerrero's claims. Jurisdiction-stripping provisions are disfavored in light of "the strong presumption in favor of judicial review of administrative action." INS v. St. Cyr, 533 U.S. 289, 298 (2001). This is particularly so when constitutional claims are raised, and the Supreme Court has maintained steadfast adherence to the principle that "[w]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." Demore v. Kim, 538 U.S. 510, 517 (2003) (citing Webster v. Doe, 486 U.S. 592, 603 (1988)).

8 U.S.C. § 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." In Reno v. American-Arab Anti-Discrimination Committee [hereinafter AADC], 525 U.S. 471 (1999), the Supreme Court explained the narrow application of Section 1252(g)'s limits on judicial review, noting that it "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute

6

removal orders.'" Id. at 482.[1]  Accordingly, the Ninth Circuit has "followed the [Supreme] Court's instruction to interpret § 1252(g) narrowly."  United States v. Hovsepian, 359 F.3d 1144, (9th Cir. 2004) (en banc).

Section 1252(g) does not strip a court's power to review "the underlying merits of the removal decision."  Maharaj v. Ashcroft, 295 F.3d 963, 965 (9th Cir. 2002) (citations omitted).  Similarly, "the consideration of a purely legal question, which does not challenge the Attorney General's discretionary authority, supports jurisdiction."  Hovsepian, 359 F.3d at 1155-56 (citations omitted). Ultimately, Guerrero's claims do not fall under section 1252(g)'s prohibition on judicial review of the commencement of proceedings or the execution of a removal order if the claims do not directly challenge those discrete actions.  Wong v. U.S. INS, 373 F.3d 952, 964 (9th Cir. 2004) (finding jurisdiction in a civil case where "[Guerrero] . . . disclaims any challenge to the execution of the removal itself, but rather asserts that her claims [alleging discrimination] implicate only actions other than that removal, or the commencement of proceedings, if any, leading to that removal"); see also Madu v. United States AG, 470 F.3d 1362, 1367-68 (11th Cir. 2006) (finding that section 1252(g) did not apply to an alien's challenge to his detention pending removal); Humphries V. Various Federal USINS Employees, 164 F.3d 936, 945 (5th Cir. 1999) (5th Cir. 2001) (finding that section 1252(g) did not apply to an

---

[1] AADC further explained that "there are of course many other decisions or actions that may be part of the deportation process -- such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final [deportation] order . . ., and to refuse reconsideration of that order." 525 U.S. at 482.

alien's <u>Bivens</u> claims for involuntary servitude and mistreatment during detention, but did preclude a <u>Bivens</u> claim for retaliatory exclusion).

B.  <u>The Parties' Arguments</u>

Here, the Government contends that the plain language of 8 U.S.C. § 1252(g) strips the Court's jurisdiction over Guerrero's lawsuit.  The Government argues that Guerrero's claims necessarily relate to the DHS's commencement of proceedings or execution of a removal order against him.  The Government refers to <u>Sissoko v. Rocha</u>, 509 F.3d 947 (9th Cir. 2007), where the Ninth Circuit found that 8 U.S.C. § 1252(g) applied to "the [Guerrero's] claim directly challenging [an immigration official's] decision to commence expedited removal proceedings." <u>Id.</u> at 950.

Guerrero is adamant that the Court has jurisdiction because his claims do not challenge the Attorney General's discretion to commence proceedings or to execute a removal order.  Rather, Guerrero argues that DHS did not have the legal authority to remove him from the United States in violation of this Court's ruling that the removal order violated due process, and that the Court thus retains jurisdiction to hear his claims.  Guerrero points to <u>AADC</u> and <u>Hovespian</u> in support of his position.

The Government responds in its reply that Guerrero's argument misunderstands the legal consequences of the timing of the reinstatement order and this Court's Order Dismissing the Indictment.  The Government argues that DHS did not violate the Court's Order when (1) the Court offered only a tentative decision at the October 18, 2004; (2) Guerrero was removed on October 21, 2004 pursuant to the reinstated removal order; and (3) the Court

8

then issued its Order Dismissing the Indictment on October 27, 2004.  In other words, the Government contends that the reinstatement of the removal order, while not "desirable or appropriate," was not unlawful because the underlying removal order remained administratively valid as of October 21, 2004 when Guerrero was removed.

C.  Analysis

The jurisdictional inquiry requires a determination whether Guerrero's claims "aris[e] from the [Defendants'] decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders," or alternatively, whether Guerrero's claims are addressed to some other action by Defendants.  This inquiry calls for a closer look at reinstatement procedures.

Reinstatement and removal orders are not the same.  A removal order typically requires that an immigration judge determine (1) whether the individual is removable from the United States and (2) whether the individual is entitled to relief from removal.  See 8 U.S.C. § 1229a.  Reinstatement is a summary deportation based upon a prior removal order.  See 8 U.S.C. § 1231(a)(5).[2]  To reinstate a prior removal order requires that an immigration officer determine: (1) the identity of the alien; (2) that the alien is subject to a

---

[2] The INA provides for reinstatement of prior removal orders as follows:
> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).

9

prior removal order; and (3) that the alien illegally reentered the United States. See 8 C.F.R. § 241.8(a)(1-3). There is no requirement of a hearing before an immigration judge that allows an alien to contest the reinstatement of a prior removal order. See Morales-Izquierdo v. Gonzales, 486 F.3d 484, 491 (9th Cir. 2007) (en banc).

Nevertheless, where reinstatement effectively re-institutes a prior removal order, it is tantamount to a "decision to . . . execute a removal order." Reinstatement also would seem to qualify as a "decision to . . . commence proceedings." As indicated earlier, the Ninth Circuit in Sissoko, 509 F.3d 947, found that an immigration official's authorization of expedited removal was a "decision to . . . commence proceedings." Id. at 950.[3] Similar to expedited removal proceedings, reinstatement is a summary procedure instituted by an immigration official.

That the decision to reinstate a prior removal order may qualify as commencing proceedings or executing a removal order, however, is not the end of the inquiry; § 1252(g) does not bar claims that, while related to the discrete actions mentioned therein, more specifically challenge action of a different kind. See AADC, 525 U.S. at 482-88; Wong, 373 F.3d at 964. The central

---

[3] Expedited removal is provided for at 8 U.S.C. 1225 (b)(1)(A)(I):
> If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 USCS § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution.

10

allegation common to Guerrero's claims is that Defendants' reinstatement of the prior removal order was unlawful because this Court had invalidated the prior removal order.  To characterize Guerrero's claims as focused solely on the fact of reinstatement would unduly narrow the scope of his challenge to the Government's conduct.  Guerrero's claims take aim at DHS's alleged decision to disregard this Court's Order.  Guerrero argues, therefore, that his claims do not merely arise from the formal decision to reinstate the removal order.

The Court would not hesitate to find § 1252(g) inapplicable if Defendants acted in defiance of a court order.  The decision to disregard a court order that invalidates a removal order is action without legal authority that does not fall within the narrow jurisdictional limits of § 1252(g) on claims arising from the ministerial acts of commencing proceedings or executing removal orders.  In this case, where Defendants are alleged to have disregarded this Court's Order, the Court's jurisdiction is intertwined with the merits of the claims.  A district court, while it cannot resolve factual disputes that relate both to jurisdiction and the merits, may determine its jurisdiction based upon the allegations in the complaint or undisputed facts in the record. Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).

Here, based on the facts as alleged in the Complaint and corroborated by the extrinsic evidence, the Court concludes that it is not presented with a situation where Defendants acted in direct violation of a court order.  When DHS reinstated the prior removal order, the Court had not yet issued its Order Dismissing the Indictment.  Although the Court expressed its intention to issue

1 the tentative decision dismissing the indictment, it did not do so
2 until after DHS had reinstated the prior removal order.  At the
3 time that DHS instituted the reinstatement proceedings, the prior
4 removal order was still in effect.  DHS's reinstatement order -
5 while terribly inappropriate in light of this Court's tentative
6 decision and the inevitability that Guerrero would promptly file a
7 motion to reopen before the BIA in reliance on this Court's
8 decision - was valid.[4]  As the reinstatement order was valid,
9 Guerrero's claims can only be a challenge to the decision to
10 reinstate a prior removal order.  Those claims, therefore, arise
11 from the commencement of reinstatement proceedings or the execution
12 of a reinstatement order.  The Court lacks jurisdiction under §
13 1252(g) to hear Guerrero's claims.[5]

---

[4] For this reason, the Court does not reach whether its Order Dismissing the Indictment would have invalidated the prior removal order, and rendered the reinstatement ineffective, if issued before the reinstatement.  It is arguable whether the Order invalidated the prior removal order, or whether Guerrero needed to separately seek relief from the removal order with the BIA.

[5] The parties do not discuss the implications of § 1252(g) for a Bivens damages remedy.  There is limited case law on the subject. The Ninth Circuit in Sissoko, 509 F.3d 947, held that § 1252(g) barred the plaintiffs there from asserting a Bivens claim for false arrest in violation of the Fourth Amendment because expedited removal proceedings were a decision to commence proceedings.  Id. The Ninth Circuit, in deciding not to extend Bivens to this context, stressed the availability of the alternative remedy of a petition for habeas corpus review.  Id. at 950.  Here, Guerrero was able to challenge the reinstatement based on the prior removal order through a motion to reopen with the BIA, and was ultimately successful in obtaining a waiver of inadmissibility.  Under these limited circumstances, where neither party raises the issue of alternative remedies and Guerrero was able to obtain relief, § 1252(g) covers Guerrero's Bivens claims.  However, if the BIA refused to reopen Guerrero's removal proceedings, see § 1003.2 (the BIA has discretion to grant motions to reopen), and Guerrero had not obtained relief, the Real ID Act's limitations on habeas review, see 8 U.S.C. 1252(a)(5), would become a relevant concern in considering the availability of alternative remedies.  St. Cyr, 533
(continued...)

This case illustrates the unnecessarily harsh results of a reinstatement process that provides little in the way of procedural safeguards. See Morales-Izquierdo, 486 F.3d at 505 (Thomas, J., dissenting) (indicating that "the reinstatement process approaches the 'constitutional danger zone' because it does not provide any opportunity for the alien to challenge the legality of a prior removal order"). Had Guerrero been accorded a reasonable opportunity to challenge the reinstatement order at a hearing before an immigration judge, the unconstitutionality of the prior removal order could have been recognized and Guerrero's removal proceedings could have been reopened. This was in fact the ultimate outcome.

However, because DHS reinstated Guerrero's prior removal order rather than reopening the removal proceedings, it was not required to review the constitutionality of the prior removal order, only to ensure its existence. See id. at 497 (9th Cir. 2007) (holding that the regulations governing reinstatement were within the statutory authority given to DHS by Congress, and that "[r]einstatement of a prior removal order–regardless of the process afforded by the underlying proceeding–does not offend due process. . . ."). This placed Guerrero in the unfortunate situation of having to raise his challenges to the reinstatement of the prior removal order from Mexico, the very real consequence of which was the hardship of an extended separation from his family. The situation appears to have been avoidable. Defendants might seriously consider whether

---

[5](...continued)
U.S. 289, 300 (2001) (internal quotations omitted) (finding that the Suspension Clause "unquestionably" requires "some judicial intervention in deportation cases").

13

reinstatement procedures could be altered to avoid this situation in the future.

**III. CONCLUSION**

For the foregoing reasons, the Court dismisses this action for lack of subject matter jurisdiction.

IT IS SO ORDERED.

Dated: June 20, 2008

_____
DEAN D. PREGERSON
United States District Judge

14